UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

CASE NO.:  8:23-CV-1318-CEH-AEP

JUSTIN LIGERI.,

      Plaintiff,

v.

ARIZONA DAILY INDEPENDENT, LLC,

      Defendant.

_____/

**DEFENDANT, ARIZONA DAILY INDEPENDENT, LLC'S
MOTION FOR SUMMARY JUDGMENT AND FOR COSTS
<u>AND ATTORNEY'S FEES PURSUANT TO § 768.295, FLORIDA STATUTES</u>**

DIAZ, REUS & TARG, LLP

Brant C. Hadaway
100 Southeast Second Street
3400 Miami, Florida 33131
Telephone: (305) 375-9220
bhadaway@diazreus.com

*Counsel for Defendant*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS............................................................................................ii

TABLE OF AUTHORITIES....................................................................................iii

INTRODUCTION.................................................................................................... 1

FACTS AND ALLEGATIONS................................................................................ 3

ARGUMENT AND CITATIONS OF AUTHORITY...................................................... 10

I.    THE COURT MUST GRANT SUMMARY JUDGMENT AS LIGERI'S CLAIMS ARE DEVOID OF MERIT, NOT SUPPORTED BY ANY MATERIAL FACT, AND BECAUSE THIS LAWSUIT VIOLATES FLORIDA'S ANTI-SLAPP LAW.....................................................................11

    A.    The Anti-SLAPP Statute Provides for a Summary Disposition of Meritless Defamation Claims........................................................ 12

    B.    ADI Engaged in Protected Activity by Publishing the Non-Defamatory Article and Headline. ............................................. 14

        1.    Florida law and the First Amendment protect true statements, or statements that are substantially true or at least not readily susceptible to defamatory interpretation................................ 15

           a.    Ligeri fails to point to any defamatory statement in the article. 17

           b.    The headline is true, substantially true, or at least not susceptible to defamatory interpretation. ............................................... 17

           c.    The article clarifies the headline's meaning. ................................... 20

        2.    Ligeri fails to plead that he was injured by the headline. .................................................................................................... 21

II.    THE COURT MUST AWARD REASONABLE ATTORNEY'S FEES AND COSTS TO ADI. ........................................................................... 22

III.    IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING........................................................... 24

CONCLUSION...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Barmapov v. Amuial*,
  986 F.3d 1321 (11th Cir. 2021).........................................................................25

*Bernstein v. Malloy*,
  2015 U.S. Dist. LEXIS 91207 (S.D. Fla. July 14, 2015) ......................................22

*Bongino v. Daily Beast Co.*,
  477 F. Supp. 3d 1310 (S.D. Fla. 2020)................................................................23

*Cape Publ'ns, Inc. v. Reakes*,
  840 So. 2d 277 (Fla. 5th DCA 2003)...................................................................22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................12

*Corsi v. Newsmax Media, Inc.*,
  519 F. Supp. 3d 1110 (S.D. Fla. 2021)..........................................................12, 22

*Erie R.R. Co. v. Tompkins*,
  304 U.S. 64 (1938).............................................................................................13

*Gov't Emples. Ins. Co. v. Glassco, Inc.*,
  2021 U.S. Dist. at *13-14 (M.D. Fla. Sept. 24, 2021) .........................................14

*Gundel v. AV Homes, Inc.*,
  264 So. 3d 304 (Fla. 2d DCA 2019)........................................................ 12, 13, 14

*Hallmark Builders, Inc. v. Gaylord Broadcasting Co.*,
  733 F.2d (11th Cir. 1984)...................................................................................18

*Hanna v. Plummer*,
  380 U.S. 460, (1965)..........................................................................................13

*Hogan v. Winder*,
  762 F.3d 1096 (10th Cir. 2014)...........................................................................21

*Jones v. Buzzfeed, Inc.*,
    591 F. Supp. 3d 1127 (N.D. Ala. 2022) ............................................................18

*Justin Ligeri v. Dow Jones & Co., Inc., et al*, Case No. 07-cv-10528 (D. Mass.) ...........4

*Lam v. Univision Communs., Inc.*,
    329 So. 3d 190 (Fla. 3d DCA 2021) ................................................................14

*Lawrence v. Altice USA*,
    841 Fed. Appx. 273 (2d Cir. 2021) ............................................................ 19, 20

*Levan v. Capital Cities/ABC, Inc.*,
    190 F.3d 1230 (11th Cir. 1999) .......................................................................15

*Mac Isaac v. Twitter, Inc.*,
    557 F. Supp. 3d 1251 (S.D. Fla. 2021 ..............................................................22

*McCormick v. Miami Herald Pub. Co.*,
    139 So. 2d 197, 200 (Fla. 2d DCA 1962) ........................................................19

*Nelson v. Assoc'd Press, Inc.*,
    667 F. Supp. 1468 (S.D. Fla. 1987) ..................................................................19

*NITV, LLC v. Baker*,
    61 So. 3d 1249 (Fla. 4th DCA 2011) ................................................................22

*Parekh v. CBS Corp.*,
    820 Fed. Appx. 827 (11th Cir. 2020) ................................................................23

*Perry v. Cosgrove*,
    464 So. 2d 664 (Fla. 2d DCA 1985) ................................................................15

*Reed v. Chamblee*,
    2024 U.S. Dist. 2449, at *12-19 (M.D. Fla. Jan. 5, 2024) ...................13, 14, 22, 23

*Rubin v. U.S. News & World Report, Inc.*,
    271 F.3d 1305 (11th Cir. 2001) .......................................................................17

*State of Arizona v. Justin Nicola Ligeri*,
    Case No. CR2021-113658-001 SE (Sup. Ct. Ariz., Maricopa Cty) ......................5

*Turner v. Wells*,
 879 F.3d 1254 (11th Cir. 2018)......................................................15-17

*United States v. Jones*,
 29 F.3d 1549, 1553 (11th Cir. 1994) ...................................................4

*Weiland v. Palm Bch. Cty. Sheriff's Ofc.*,
 792 F.3d 1313 (11th Cir. 2015)...........................................................24

*Woodcock Jnl. Pub'g Co.*,
 230 Conn. 525 (Conn. Sup. Ct. 1994)............................................20-21

**Statutes and Rules**

Fla. Stat. § 768.295............................................................................*passim*

Fla. Stat. § 768.295(2)(a) ........................................................................14

Fla. Stat. § 768.295(3) .............................................................................12

Fla. Stat. § 768.295(4) ...........................................................1, 13, 22, 24, 25

Fla. Stat. § 770.01 .....................................................................................9

Fed. R. Civ. P. 56(a) ................................................................................12

FED. R. CIV. P. 56(b)...............................................................................11

Fla. Local Rule 7.01(b) ...........................................................................24

Fla. Local Rule 7.01(c)............................................................................24

Defendant, Arizona Daily Independent, LLC ("ADI"), by and through its undersigned counsel, pursuant to § 768.295, Florida Statutes and Federal Rule of Civil Procedure 56, moves for summary judgment and for an award of costs and attorney's fees pursuant to § 768.295(4), Florida Statutes.  In support, ADI states:

## INTRODUCTION

> "I feel like Michael Corleone at the end of the [G]odfather[.] I'm just cleaning up everything."

Plaintiff, Justin Ligeri, repeatedly threatened to murder two erstwhile associates in a business dispute in Arizona. He went so far as to solicit someone to commit the murders for him.

Mesa, Arizona police investigated Ligeri's actions as "a possible murder for hire case." Following an investigation, he was charged with several offenses, including Conspiracy to Commit Aggravated Assault. He later pled guilty to Attempted Stalking with Fear of Physical Injury, a Class 6 felony under Arizona law.

Ligeri – who holds himself out to the public as an online retail mogul who was the first person to record $1 million in sales on Amazon in a single day – never denied the fact that he made the threats that led to his conviction.

Defendant, ADI, an online publication based in Arizona, accurately reported the facts of Ligeri's case in an article with a headline derived from the Mesa PD's report: "Murder for Hire Conspiracy Case Results in Conviction of

1

Former Amazon Retail Star."[1] ADI's publication of the report was and remains a protected activity under the First Amendment.

Ligeri tacitly acknowledges that the article accurately reported the facts of his criminal case but claims that the *headline* (what he refers to as the article's "title") "was a lie." He claims to have made repeated demands to take down the "title" of the article, but only alleges to have been damaged by the article, not the "title."

These inconsistent allegations give the game away. Ligeri has not been damaged by the accurate headline, which he says is a "lie." He wants an unflattering but factually accurate news report about him to be taken down.

Threats of murder in a business dispute are clearly a matter of public interest, and ADI clearly had a First Amendment right to report the facts. Ligeri brings this lawsuit in an effort to make ADI shut up because, he claims, the story is hurting his business. Such conduct clearly violates Florida's Anti-SLAPP statute.

Even if this lawsuit is not a SLAPP violation, the facts and the very allegations of the Complaint clearly demonstrate that Ligeri has no colorable claim for libel against ADI. The headline and the story are accurate. Even if the headline

---

[1]     Ligeri has not troubled himself to attach or link the allegedly libelous article. The article may be found at https://arizonadailyindependent.com/2022/03/28/murder-for-hire-conspiracy-case-results-in-conviction-of-former-amazon-retail-star/ (last viewed on March 25, 2024).

was misleading or confusing (which it is not), Ligeri himself tacitly points out that

the story clarifies the headline's meaning.

Ligeri might regret having to face the consequences of his behavior, but he

has no viable claim against ADI. The Court should dispose of this utterly frivolous

case by granting summary judgment and awarding fees and costs to ADI.

## FACTS AND ALLEGATIONS

1.      Justin Ligeri holds himself out to the public as the "Founder & CEO"

of Kangaroo Manufacturing & Ranked 1Pro Events.[2]

2.      In his biography, Ligeri claims that his "visionary strategies for

generating record-breaking sales on Amazon are the cornerstone of his reputation

as an online retail mogul." *Id*. "In 2011," Ligeri claims, he:

> became the first person ever to sell over $1 million worth
> of product in a single day on Amazon. His proprietary
> skills, systems, and processes turned an initial $40
> investment into almost $200 million in Amazon sales in
> six years, and top-ranked him on Inc. magazine's 500 lists
> of fastest-growing private companies.
>
> A global leader of Million Dollar Days on Amazon,
> Justin's expertise on manufacturing, importing and
> ranking products on Amazon has made him a highly-
> regarded speaker around the world.

*Id*.

---

[2]     *See* https://amzsummits.com/speakers/justin-ligeri/ (last viewed on March 14,
2024).

3.      In 2006, Ligeri was reportedly charged with, and pled guilty to, identity fraud and forgery of a document in Massachusetts.[3]

4.      In 2007, Ligeri filed a lawsuit alleging that news articles reporting on his identity fraud and forgery case defamed him. *See Justin Ligeri v. Dow Jones & Co., Inc., et al*, Case No. 07-cv-10528 (D. Mass.), at Complaint [DE 1].[4] According to Ligeri, the articles were riddled with falsehoods, but conspicuously absent from that complaint was any denial that he was charged with, and pled guilty to, the crimes of identify fraud and forgery.

5.      Ligeri's lawsuit against Dow Jones, *et al* was dismissed on jurisdictional grounds. *See id*. at Order [DE 12]. ADI does not know whether Ligeri re-filed that action in state court but notes that after nearly 18 years the article is still available online[5] and can be found using Google search terms "Ligeri" and "scam." If he did re-file in state court, it is fair to assume that he was unsuccessful.

---

3       *See*    https://www.southcoasttoday.com/story/news/2006/10/27/october-27-2006/50375698007/ (last viewed on March 27, 2024). South Coast Media Group was one of the defendants named in Ligeri's suit in Massachusetts.

4       The Court "may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation and internal quotation marks omitted).

5       *See supra*, fn. 3.

6.     Thus, prior to the events underlying this case, Ligeri had shown that he: (1) holds himself out as a public figure; (2) is no stranger to public controversy; and (3) does not like the media reporting on his criminal wrongdoing.

7.     On March 28, 2022, ADI published a news report regarding another criminal case brought against Ligeri, this time in Maricopa County, Arizona – *State of Arizona v. Justin Nicola Ligeri*, Case No. CR2021-113658-001 SE (Sup. Ct. Ariz., Maricopa Cty). *See* Declaration of Terri Jo Neff, attached as Exhibit "A" (the "Neff Decl."), ¶2 and Exhibit 1 thereto ("*Ariz. v. Ligeri* Docket" or "Ex. A.1").

8.     The article, *Murder For Hire Conspiracy Case Results In Conviction Of Former Online Retail Star*, was written based on court records and the Report of the Mesa, Arizona Police Department. Ex. A ("Neff Decl."), ¶4. A redacted copy of the Police Report is attached as Exhibit 2 to Ms. Neff's Declaration (hereinafter, the "Police Report" or "Ex. A.2"). A pdf version of the article is attached as Exhibit "B" to this Motion.

9.     The criminal case against Ligeri in Arizona arose from repeated threats of murder and other harm that Ligeri made against two erstwhile business associates, Joshua Tischer and John Burns, as well as incidents of stalking. Ex. A.2, Police Report at 8 – 9, 12 – 16. Some of Ligeri's threats were recorded and included the following statements:

- "[Y]ou must have factored the possibility that I can commit murder, right? like you thought of that right?" *Id*. at 13.

- "… But before I go work at In and Out Burger with two grand in my name that I'd buy a handgun and go shoot John Burns. . . ." *Id*.

- "A possibility I lose it tonight, there is a possibility I take a bat to his head to his skull that's a possibility, does he understand that possibility?" *Id*. at 14.

- ". . . I know where you live, and I know where John lives and it's gonna start tonight okay? [A]nd it's gonna be a bat to your fucking skull, I am just telling you, you fucked with the wrong guy I'm gonna take you both out." *Id*. at 15.

10.     The Police Report also documented statements evidencing that Ligeri solicited another former business associate, Eric Ivanov, to murder Tischer and Burns. *Id*. at 8, 12 – 13, 16. The Police Report documented several messages from Ligeri in which he discussed how to pay Ivanov to kill or severely harm Tischer and Burns. *Id*. at 16 – 20. In one of his messages to Ivanov, Ligeri wrote, "I feel like Michael Corleone at the end of the [G]odfather[.] I'm just cleaning up everything." *Id*. at 19.[6]

---

[6]     Images of Ligeri's text messages are appended to the Police Report, beginning on p. 45 of the exhibit.

11.     As a result of Ligeri's attempts to solicit Ivanov to murder Tischer and Burns, the Police Report included a note that the case against Ligeri was investigated as "**a possible murder for hire case**." Police Report at 12 (emphasis added).

12.     Ligeri subsequently pled guilty to Attempted Stalking with Fear of Physical Injury, a Class 6 felony in Arizona. *See* Plea Agreement, attached as Exhibit "C".

13.     The article was published four days after the Plea Agreement was docketed and included the terms of Ligeri's plea. *See* Ex. B.

14.     Ligeri has admitted to others that he made the threats. In a rambling, December 7, 2023 email sent to multiple third parties, Ligeri wrote, "**I did threaten to kill them.** . . . And I admit I was very graphic in my description of how I would kill him during this call." *See* Dec. 7, 2024 Email, attached as Exhibit "D" at p. 2 (emphasis in email).

### The Complaint

15.     Ligeri does not deny that the article faithfully recounts the facts contained in the Police Report, as well as the events of his criminal case. *Compare*

Exhibit B with Exhibits A.1 (Docket); A.2 (Police Report); and C (Plea Agreement). To the contrary, he acknowledges that the article is accurate:

14.    The article itself acknowledged that the specific charge for conspiracy to commit murder was not present in the case itself.

15.    The article states "Justin Nicola Ligeri will be sentenced April 29th in Maricopa County Superior Court for Attempted Stalking with Fear of Physical Injury, a Class 6 Felony. Three other felonies, including conspiracy to commit aggravated assault, will be dismissed by Judge Scott Minder as part of a plea deal negotiated last week."

16.    Rather than allege that the article is inaccurate, Ligeri alleges that the *headline* (which he refers to as the article's "title") "was a lie." Cmplt., ¶¶13, 16. He alleges that "[t]he Daily Independent knew that the article *title* was a lie and seriously misleading and did not change the title of the article because it would attract more internet traffic." Cmplt., ¶16 (emphasis added).

17.    However, Ligeri alleges that he was injured by the *article* (which he acknowledges to be accurate), not the headline. Cmplt., ¶17 ("As a result of the article appearing as the first search when individuals run internet searches of Ligeri, his reputation has been severely damaged and tarnished."); ¶18 ("Ligeri's business relationships have been damaged as a result of the article.").

18.    Ligeri alleges that he "has repeatedly asked the Daily Independent to remove the title of the article," but that "[t]he Daily Independent has refused to comply with his demands." Cmplt., ¶19. However, in his demand to ADI, Ligeri

in fact demanded that the *article* be taken down. *See* Ligeri Demand Letter of July 5, 2022, attached as Exhibit "E".[7]

19.   Ligeri goes on to emphasize his allegation that the *headline*, *not the article*, was false. Cmplt., ¶¶ 21 – 22. He alleges that the headline "imputes a serious crime to" him. *Id.*, ¶23.

20.   Ligeri alleges that the "false statement" – i.e., the headline – "appears as the first search result when individuals search 'Justin Ligeri' on Google.com." Cmplt., ¶22. But Ligeri's name appears in the article, not the headline.

21.   He goes on to make conclusory assertions that the *article* defamed him, but without pointing to any false statement of fact in the article. Cmplt., ¶¶24-28.

22.   This Motion follows.

---

[7]   The iteration of the complaint that Ligeri attached to his demand letter differs from the Complaint he filed in this Court. *Compare* Complaint *with* Exhibit E. It is thus at least arguable that Ligeri failed to comply with the pre-suit demand required by Florida law. *See* § 770.01, FLA. STAT.

## ARGUMENT AND CITATIONS OF AUTHORITY

Both the face of the Complaint and the facts demonstrate that Ligeri filed this frivolous lawsuit because ADI engaged in its First Amendment right to publish a story about Ligeri's criminal acts. Ligeri tacitly admits that the article is accurate. He just wants ADI to shut up about his criminal wrongdoing in Arizona, just as he wanted the media to shut up about his criminal wrongdoing in Massachusetts when he unsuccessfully sued Dow Jones, *et al* in 2007.

Forced to concede the article's accuracy, Ligeri tries to make his case based on the headline: "Murder for Hire Conspiracy Case Results in Conviction of Former Amazon Retail Star." Cmplt., ¶11, ¶13 ("The title of the article was a lie as Mr. Ligeri was never charged with Conspiracy to Commit Murder."); ¶16 (ADI "knew the article title was a lie and seriously misleading…"); ¶19 (ADI "refused to comply" with demands "to remove the title of the article); and ¶¶21-23.

But Ligeri's allegations regarding the headline dissolve faster than a mouthful of cotton candy on a humid Florida evening. *First*, the headline does not name Ligeri and does not say that he was charged with "Conspiracy to Commit Murder."

*Second*, the headline is accurate or at least substantially accurate. Ligeri's criminal case in Arizona was investigated as a "murder for hire" plot, and his accurately-reported deeds fit the common understanding of a "murder for hire

conspiracy." That Ligeri attempted to solicit a colleague to commit the crime of murder and pled guilty to a felony based on the circumstances of his "very graphic" threats of murder is beyond dispute.

*Third*, even if the headline is misleading, the article clarifies the headline's meaning. Ligeri tacitly concedes as much in his Complaint.

*Fourth*, Ligeri alleges that he was damaged by the article (which he concedes to be accurate), not the headline (which he alleges to be a "lie"). Because damages are an essential element of a claim for libel, the Court must grant summary judgment.

ADI should not have to respond to such a frivolous lawsuit, brought against it by a vindictive man with a criminal past who does not like the media reporting on his violent behavior. Accordingly, the Court should award ADI its reasonable attorney's fees and costs incurred in bringing this Motion.

## I.   THE COURT MUST GRANT SUMMARY JUDGMENT AS LIGERI'S CLAIMS ARE DEVOID OF MERIT, NOT SUPPORTED BY ANY MATERIAL FACT, AND BECAUSE THIS LAWSUIT VIOLATES FLORIDA'S ANTI-SLAPP LAW.

"Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). A moving party is entitled to summary judgment when the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). The nonmoving party must "go beyond the pleadings and her own affidavits" and point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324 (quotation omitted).

**A.      The Anti-SLAPP Statute Provides for a Summary Disposition of Meritless Defamation Claims.**

Florida's Anti-SLAPP statute has both a substantive and a procedural component. As to the substantive component, it provides:

> A person . . . in this state may not file or cause to be filed . . . any lawsuit . . . against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

§ 768.295(3), FLA. STAT. "'Free speech in connection with public issues' means any written or oral statement that is protected under applicable law and . . . is made in or in connection with a . . . magazine article, . . . news report, or other similar work." § 768.295(2)(3). Florida courts have recognized that § 768.295(3) "creates a right not to be subject to meritless suits filed 'primarily because [the defendant] has exercised the constitutional right of free speech in connection with a public issue[.]'" *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 310 (Fla. 2d DCA 2019). *See also Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1128 (S.D. Fla. 2021).

The statute's procedural component provides:

> A person or entity sued by . . . another person in violation of this section has a right to an expeditious resolution of a claim that the suit is in violation of this section. A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity. The person or entity may file a motion for summary judgment, together with supplemental affidavits, seeking a determination that the claimant's . . . lawsuit has been brought in violation of this section. The claimant . . . shall thereafter file a response and any supplemental affidavits.

§ 768.295(4), Fla. Stat.

In order to carry out the Legislature's intent in enacting this provision, the *Gundel* court held that a motion brought under the Anti-SLAPP statute is subject to a burden-shifting approach. *Gundel*, 264 So. 3d at 314. Once the SLAPP defendant has made a *prima facie* showing that the Anti-SLAPP statute applies, the burden shifts to the plaintiff "to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit.'" *Id*.

Federal courts sitting in diversity must apply the substantive law of the forum state. *See, e.g., Hanna v. Plummer*, 380 U.S. 460, 465 (1965) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This Court has extended the *Eerie* doctrine to the application of Florida's Anti-SLAPP statute. *See Reed v. Chamblee,* Case Nos. 22-cv-1059; 22-cv-1181, 2024 U.S. Dist. LEXIS 2449, at \*12-19 (M.D. Fla. Jan. 5, 2024) (Corrigan, D.J.) (citations omitted). Because *Gundel* construed the statute as

providing a substantive right, the decision in *Gundel* – both as to the substantive right created the statute and the burden-shifting approach to motions brought under the statute – has been held as binding on federal courts sitting in diversity. *See Gov't Emples. Ins. Co. v. Glassco, Inc.*, Case No. 19-cv-1950, 2021 U.S. Dist. LEXIS 183510, at *13-14 (M.D. Fla. Sept. 24, 2021) (Mizell, D.J.) Thus, this Court recognizes that Florida's Anti-SLAPP statute creates "a substantive right that includes a burden-shifting approach to deciding a motion." *Id.* at *14.[8]

**B.    ADI Engaged in Protected Activity by Publishing the Non-Defamatory Article and Headline.**

Publishing the subject article, with its attendant headline, was clearly an exercise in "[f]ree speech in connection with public issues," as defined by the Anti-SLAPP statute. Both the article and its attendant headline constituted written statements "made in or in connection with a [] news report." § 768.295(2)(a), FLA. STAT. Threats of murder and attempts to solicit a hitman in a business dispute – especially from someone who claims to be an "online retail mogul" – are clearly of

---

[8]    *But see Lam v. Univision Communs., Inc.*, 329 So. 3d 190, 193-97, 199 (Fla. 3d DCA 2021) (declining to follow the burden-shifting approach of *Gundel* and certifying conflict). *Lam* preceded Judge Corrigan's decision in *Chamblee*, 2024 U.S. Dist. LEXIS 2449, by more than two years. Nevertheless, despite providing a detailed review of Judge Mizelle's decision in *Glassco*, *Chamblee* seems not to mention *Lam*. In any event, *Lam* did not criticize *Gundel's* observation that the Legislature created a substantive right for persons to be free from meritless SLAPP claims. Thus, whether the Court follows the *Gundel's* burden-shifting procedure or not, the result is the same: This lawsuit is a meritless SLAPP suit.

interest to the public. And because they were non-defamatory, the article and headline were also clearly "protected under applicable law[.]" *Id.*

> **1.** **Florida law and the First Amendment protect true statements, or statements that are substantially true or at least not readily susceptible to defamatory interpretation.**

To state a claim for libel as to a private person under Florida law, a plaintiff must prove five elements: (1) publication; (2) falsity; (3) negligence; (4) actual damages; and (5) a defamatory statement. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citation omitted). For public figures, the standard is more exacting: the plaintiff must establish that the author or publisher acted with "actual malice" – i.e., the plaintiff "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* at 1273.

A statement is libelous (or defamatory) *per se* if,

> when, considered alone without innuendo, it tends to subject a person to hatred, distrust, ridicule, contempt, or disgrace, or tends to injure him in his trade or profession, . . . or if it imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office.

*Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985). As with libel, a claim for libel *per se* requires a plaintiff to plead and prove actual malice if the plaintiff is a public figure. *See Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1238-39 (11th Cir. 1999).

In Florida, public figure status "is a question of law to be determined by the court." *Turner*, 879 F.3d at 1271 (citation omitted). Ligeri should be deemed a limited public figure for purposes of this case. First, Ligeri "played a central role in the [underlying] controversy" regarding his threats of murder in a business dispute. *Id.* at 1273. Second, "the alleged defamation was germane to" Ligeri's role in that controversy. *Id.* And, as pointed out in the Statement of Facts, Ligeri holds himself out as a prominent "online retail mogul." SoF ¶2. The fate of Ligeri's online retail business was at the center of his dispute with Tischer and Burns and his threats to murder them. Thus, Ligeri's claims should be held to the actual malice standard. *Turner*, 879 F.3d at 1273.

But regardless of whether this Court applies the negligence standard for private persons or the actual malice standard for public figures, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are *protected from defamation actions by the First Amendment.*" *Id.* at 1262 (citations omitted) (emphasis added). "Whether the statement is one of fact or opinion and whether a statement of fact is susceptible to defamatory interpretation are questions of law for the court." *Id.* at 1262-63 (citation omitted). "When making this assessment, a court should construe statements in their totality[.]" *Id.* at 1263 (citation omitted).

### a. Ligeri fails to point to any defamatory statement in the article.

Beginning with the article, itself, Ligeri alleges that it is "false or defamatory" (Cmplt. ¶24); "a false and unprivileged publication of unfounded statements" (¶25); "is libelous per se" and "was published with malicious intent." (¶26). But these allegations are merely conclusory. Ligeri fails to specifically point out a single false statement in the article, let alone a statement that is defamatory or libelous. Indeed, Ligeri at least tacitly admits that the article accurately reports the facts of his criminal case. Cmplt., ¶¶10, 14, 15.

### b. The headline is true, substantially true, or at least not susceptible to defamatory interpretation.

A statement "must be false to be libelous[.]" *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1308 (11th Cir. 2001). True statements and statements that are not readily susceptible to being proven false are protected by the First Amendment. *Turner*, 879 F.3d at 1262.

Ligeri alleges that the article's headline – "Murder for Hire Conspiracy Results in Conviction of Former Amazon Retail Star" – is a "lie" because he "was never charged with Conspiracy to Commit Murder." Cmplt., ¶13. But this allegation is a strawman: The headline does not say that Ligeri was charged with conspiracy to commit murder.

17

Later in the Complaint, Ligeri refers to the headline as a "false statement" that "imputes a serious crime" to him. Cmplt., ¶¶21-23. Ligeri does nothing to clarify what he regards to be "false" about the headline. As to "imput[ing] a serious crime" to him, Ligeri does not deny that ADI accurately reported his (by his own admission, "very graphic") threats of murder and his attempts to solicit a former associate to commit the murders for him.

Ligeri cannot dispute that the Mesa Police Department investigated his threats as "a possible murder for hire case." Police Report, Ex. A.2, at 12. Anyone reading the Police Report would understand that Ligeri made numerous, graphic threats to murder two former business associates for allegedly "stealing" from him and that he attempted to solicit another former associate to commit the murders for him.

Any reasonable person would interpret the headline's reference to a "Murder for Hire Conspiracy" to mean that someone conspired to hire a hitman to have someone murdered. *See Hallmark Builders, Inc. v. Gaylord Broadcasting Co.,* 733 F.2d 1461, 1464 (11th Cir. 1984). "Moreover, the statement [in the headline is] accurate." *Id.* Ligeri did solicit someone to commit murder, and while not charged with attempted murder, he pled guilty to a felony arising from the very same circumstances. *See Jones v. Buzzfeed, Inc.,* 591 F. Supp. 3d 1127, 1142 (N.D. Ala. 2022) ("Contrary to Plaintiffs' assertions, the facts in the headline are true[.]"). Ligeri also

admits that he was initially charged with "[t]hree other felonies, including conspiracy to commit aggravated assault[.]" Cmplt., ¶15.[9]

"Nor does the law require perfect accuracy – the law requires only that the publication be substantially true." *Nelson v. Assoc'd Press, Inc.*, 667 F. Supp. 1468, 1477 (S.D. Fla. 1987) (citation omitted). "[M]ere inaccuracies, not affecting materially the purport of the article, are immaterial." *Id*. (quoting *McCormick v. Miami Herald Pub. Co.*, 139 So. 2d 197, 200 (Fla. 2d DCA 1962). "In determining substantial truth, the issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced." *Lawrence v. Altice USA*, 841 Fed. Appx. 273, 275 (2d Cir. 2021) (citation and internal quotation marks omitted).

In *Lawrence*, the plaintiff "argued that, after he was arrested for breaching the peace," the defendant "falsely stated that he was facing charges for 'stalking' in its television and online reporting." *Id*. at 274. The court observed that the plaintiff "had been arrested for allegedly following a woman around a grocery store and out to her car." *Id*. The court found that "[t]he totality of [the plaintiff's] conduct . . . met the common definition of 'stalking'. . . ." *Id*. at 275.

---

[9]    The charges also included Stalking-Fear of Death and Aggravated Assault. *See Ariz. v. Ligeri* Docket, Ex. A.1.

Like Ligeri, the plaintiff in *Lawrence* claimed that the report "was defamatory because he was arrested for breaching the peace . . . not for stalking[.]" *Id*. The court agreed insofar as that the reports' headlines "were technically inaccurate." *Id*. at 275-76. The court nevertheless rejected the plaintiff's argument, noting that "[a] media defendant's characterization of criminal allegations against a private plaintiff is substantially true if the characterization comports with the common understanding of the terms employed." *Id*. at 276 (citations omitted). The defendant's "use of the term 'stalking' would not have affected average readers' and viewers' perceptions of [the plaintiff] because the gist of its reporting established that [the plaintiff's] behavior met the common definition of stalking." *Id*.

Here, the headline, "Murder For Hire Conspiracy Results In Conviction of Former Amazon Retail Star," was similarly accurate. Ligeri solicited a hitman to murder two erstwhile business associates. Those actions are consistent with the common understanding of a "murder for hire conspiracy." At best for Ligeri, any mere inaccuracy in the headline is immaterial. The headline is true, substantially true, or at least not reasonably susceptible to defamatory interpretation.

### c.    The article clarifies the headline's meaning.

"Inaccurate headlines are not libelous if they are correctly clarified by the text of an article." *Lawrence*, 841 Fed. Appx. at 276 (quoting *Woodcock Jnl. Pub'g Co.*,

230 Conn. 525, 554 (Conn. Sup. Ct. 1994)). In other words, "the entire body of the article serves as context for the headline[.]" *Hogan v. Winder*, 762 F.3d 1096, 1108 (10th Cir. 2014).[10]

Ligeri himself tacitly alleges in his Complaint that the headline here is clarified by the article. In paragraph 14, Ligeri alleges, "The article itself acknowledged that the specific charge for conspiracy to commit murder was not present in the case itself." Cmplt., ¶14. He further alleges, "The article states 'Justin Nicola Ligeri will be sentenced April 29th in Maricopa County Superior Court for Attempted Stalking with Fear of Physical Injury, a Class 6 Felony. Three other felonies, including conspiracy to commit aggravated assault, will be dismissed by Judge Scott Minder as part of a plea deal negotiated last week.'" Cmplt., ¶15. Thus, even if the headline was inaccurate, by Ligeri's own admission anyone reading the article would understand the headline's meaning from reading the body of the article. As previously noted, Ligeri has not pointed to anything in the article that he claims to be defamatory.

### 2. Ligeri fails to plead that he was injured by the headline.

"[I]n order to establish a cause of action for defamation, a plaintiff must show that '(1) the defendant published a false statement about the plaintiff, (2) to

---

[10]   ADI has not located any decisions on this point under Florida law but believes the proposition to be consistent with Florida case law.

a third party, and (3) the falsity of the statement caused injury to the plaintiff.'"

*Bernstein v. Malloy*, 2015 U.S. Dist. LEXIS 91207, at *4 (S.D. Fla. July 14, 2015)

(quoting *NITV, LLC v. Baker*, 61 So. 3d 1249, 1252 (Fla. 4th DCA 2011)). "Thus, 'to

recover for defamation, a plaintiff must show that damages were proximately

caused by the defamatory statements.'" *Id.* (quoting *Cape Publ'ns, Inc. v. Reakes*, 840

So. 2d 277, 281 (Fla. 5th DCA 2003)).

 Here, Ligeri alleges only that he was damaged by the *article*, not the *headline*.

Cmplt., ¶¶17, 18. But he fails to specifically identify a defamatory statement in the

article, nor could he. Indeed, as noted above, he tacitly concedes the article's

accuracy. Cmplt., ¶¶14, 15. And he has informed third parties that he made the

"very graphic" threats of murder recounted in the article. *See* Ex. D.

 Thus, Ligeri fails to allege, and cannot possibly prove, an essential element

of his claim for libel. The Court must grant summary judgment in favor of ADI.

## II.     THE COURT MUST AWARD REASONABLE ATTORNEY'S FEES AND COSTS TO ADI.

 "The court shall award the prevailing party reasonable attorney fees and

costs incurred in connection with a claim that an action was filed in violation of"

Florida's Anti-SLAPP statute. § 768.295(4), FLA. STAT. Courts within this Circuit

have consistently enforced this mandatory fee-shifting provision. *See Chamblee*,

2024 U.S. Dist. LEXIS 2449, at *15-19 (citations omitted). *See also Corsi*, 519 F. Supp.

3d at 1128; *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1261 (S.D. Fla. 2021);

*Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1322-24 (S.D. Fla. 2020). An entitlement to fees under the Anti-SLAPP statute is governed by two conditions: (1) the plaintiff's claims for defamation lacked merit; and (2) the suit arose out of protected First Amendment activity. *Chamblee*, 2024 U.S. Dist. LEXIS 2449, at *18-19 (citations omitted). *See also Parekh v. CBS Corp.*, 820 Fed. Appx. 827, 836 (11th Cir. 2020) (affirming award of fees under § 768.295(4), Florida Statutes where the "suit was without merit [],  and it arose out of the defendant's protected First Amendment activity – publishing a news report on a matter of public concern.").

For the reasons discussed above, this lawsuit is not only meritless, but frivolous. By his own admission, Ligeri "did threaten to kill" his former business associates, and that he was "very graphic" his description of how he would kill them. Ex. D. At a minimum, he does not deny any of the facts reported in the article, nor could he. The docket in his criminal case, Ex. A.1, the Police Report, Ex. A.2, and his Plea Agreement, Ex. C, all amply demonstrate that ADI faithfully reported the facts of Ligeri's criminal case. The headline, for its part, is a true statement of fact. Ligeri's case was investigated as a "murder for hire" conspiracy, and he was convicted of a serious crime, pursuant to a plea of guilty.

That Ligeri's suit arises out of ADI's "protected First Amendment activity – publishing a news report on a matter of public concern," *Parekh, supra*, is also beyond dispute.  As he attempted to do in his unsuccessful case against Dow Jones,

Ligeri simply wants the media to shut up about his criminal wrongdoing. This Court should have none of it.

Thus, in addition to granting summary judgment to ADI, the Court should enter an order finding that ADI is entitled to an award of reasonable attorney's fees and costs, pursuant to § 768.295(4), Florida Statutes.

Should the Court defer ruling on an entitlement, ADI reserves the right to bring a motion on entitlement pursuant to Local Rule 7.01(b) and a supplemental motion on the amount pursuant to Local Rule 7.01(c), following entry of final judgment.

## III.   IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED AS A SHOTGUN PLEADING.

Ligeri brings claims for "libel" and "libel per se" under a single Count I. To make matters more confusing, Count I incorporates only the first 14 of 19 paragraphs in the Complaint's general allegations.

On its face, this is a classic example of a shotgun pleading, which the Eleventh Circuit has repeatedly condemned. *See Weiland v. Palm Bch. Cty. Sheriff's Ofc.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) (noting that "[t]he third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief") (citing, *inter alia*, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-80 (11th Cir. 2008)). Should the Court deny summary

judgment, it would be within this Court's discretion to dismiss the Complaint as a shotgun pleading. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

## CONCLUSION

Based on the foregoing, Defendant, Arizona Daily Independent, respectfully asks that the Court grant summary judgment and order that Defendant is entitled to an award of reasonable costs and attorney's fees incurred in bringing this Motion, pursuant to § 768.295(4), Florida Statutes. In the alternative, the Court should dismiss the Complaint as a shotgun pleading.

Filed this 29th day of March, 2024.

DIAZ, REUS & TARG,  LLP
3400 Miami Tower
Miami, Florida 33131
Telephone: (305) 375-9220
Facsimile: (305) 375-8050

*s/Brant C. Hadaway*
Brant C. Hadaway, B.C.S.
Florida Bar No. 494690
E-mail: bhadaway@diazreus.com

*Counsel for Defendant*