UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUSTIN LIGERI,

    Plaintiff,

v.                                              Case No. 8:23-cv-01318-CEH-AEP

ARIZONA DAILY INDEPENDENT, LLC,

    Defendant.
_____/

**ORDER**

    This cause comes before the Court on Defendant's Second Renewed Motion for Summary Judgment ("Motion") (Doc. 72), Plaintiff's Response in Opposition (Doc. 77), and Defendant's Reply (Doc. 82). The parties consented to the undersigned's jurisdiction for the disposition of the Motion (Doc. 83), and this Court approved the proposed consent and referred the matter to the undersigned for disposition (Doc. 84). The undersigned held a hearing on the Motion on January 27, 2026 (Docs. 85–87). Upon due consideration of the record and the parties' arguments at the hearing, the Court finds that the Defendant's Motion for Summary Judgment is due to be granted.

**I.**     **Background**

    The undisputed facts of this case are straightforward.[1] Plaintiff holds himself out as an established entrepreneur in the e-commerce space (Doc. 70, ¶ 6). He is the

---

[1] The parties agreed that the materials facts are not in dispute (Doc. 40), and the background is largely derived from the parties' Joint Stipulation of Material Facts (Doc. 61).

Founder and CEO of Kangaroo Manufacturing & Ranked 1Pro Events (Doc. 61, ¶ 1). Through these businesses, Plaintiff generated "record-breaking sales on Amazon," fostered a reputation in the online retail sales community, and has shared his expertise on manufacturing, importing, and ranking products on Amazon at various conferences (Doc. 61, ¶ 2).

At some point, Plaintiff's business relationship with two associates, Joshua Dean Tischer and John Andrew Burns, soured due to issues with repaying debts (Doc. 77, ¶ 6). Out of fear for losing his business, Plaintiff made numerous threats of death and bodily injury to Burns and offered to pay someone to harm Tischer and Burns because Plaintiff believed they wronged him (Doc. 22-3, at 20–22). Investigators gathered recorded calls, text messages, and witness statements in furtherance of "a possible murder for hire case" (Doc. 22-3, at 17). Ultimately, in April 2021, the Mesa Police Department arrested and charged Plaintiff with Aggravated Assault, Stalking – Fear of Death, and Stalking – Fear of Physical Injury (Doc. 61, ¶ 4). *See State of Arizona v. Justin Nicola Ligeri*, Case No. CR2021-113658-001 SE (Sup. Ct. Ariz., Maricopa Cty.). Plaintiff was never charged with murder or conspiracy to commit murder or murder for hire (Doc. 61, ¶ 6). On March 24, 2022, Plaintiff pleaded guilty to Attempt to Commit Stalking (Doc. 61, ¶ 6).

On March 28, 2022, Defendant published a news report on Plaintiff's case titled *Murder For Hire Conspiracy Case Results In Conviction Of Former Online Retail Star* (the "Article") (Doc. 61, ¶ 7); https://arizonadailyindependent.com/2022/03/28/-murder-for-hire-conspiracy-case-results-in-conviction-of-former-amazon-retail-star/.

The Article summarized the Mesa Police Report on Plaintiff's investigation, highlighting the threatening quotes relied on in the prosecution. It also noted that Plaintiff was scheduled to be sentenced "in Maricopa County Superior Court for Attempted Stalking with Fear of Physical Injury, a Class 6 felony" and the "[t]hree other felonies, including conspiracy to commit aggravated assault, [were] dismissed by Judge Scott Minder as part of a plea deal." *Id.*

In this case, Plaintiff sued Defendant alleging that the Article's headline is defamatory as libel (Count I) and libel per se (Count II) because it falsely implied that Plaintiff was involved in a murder for hire scheme, a charge that was never filed (Doc. 70, ¶¶ 11, 21). Plaintiff alleges that the title of the Article was false and defamatory because he was never charged with conspiracy to commit murder; that Defendant knew it was false when publishing because it had access to the criminal record; that publishing the Article was done with reckless disregard of the headline's truthfulness; and that the headline has damaged his character and reputation, impacting his ability to conduct business. (Doc. 70, ¶¶ 22–31). According to Plaintiff, the headline alone constitutes libel per se because it frames him for the commission of an infamous crime and exposes him to "hatred, ridicule, and disgrace." (Doc. 70, ¶¶ 32–39). On these allegations, Defendant moved for summary judgment, arguing that the headline read together with the content in the Article is not false—a necessary element for Plaintiff to prevail (Doc. 72, at 3). Further, Defendant seeks attorney's fees and costs under Florida's Anti-SLAPP statute. *See* Fla. Stat. § 768.295 (2025).

## II. Legal Standard

Summary judgment is appropriate where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The existence of some factual disputes between litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). The substantive law applicable to the claims will identify which facts are material. *Id.* at 248.

In reviewing the motion, courts must view the evidence and make all factual inferences in a light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant. *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265, 1268 (11th Cir. 2007) (citation omitted). The movant "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *Celotex Corp.*, 477 U.S. at

323). The burden then shifts to the non-movant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)).

### III.   Discussion

Defendant argues it is entitled to summary judgment because Plaintiff as a matter of law cannot establish his claims of libel and libel per se. Further, Defendant asserts that the claim is meritless and fees should be awarded based upon Florida's Anti-SLAPP[2] statute, which prohibits a person from suing an entity "without merit . . . primarily because . . . [it] has exercised the constitutional right of free speech in connection with a public issue . . . as protected by the First Amendment to the United States Constitution and [the Florida] Constitution." Fla. Stat. § 768.295(3). Florida's Anti-SLAPP statute is neither a standalone claim nor an affirmative defense raised by the defendant, but rather, it is a procedural mechanism that allows courts to "expeditiously dispose[]" of prohibited SLAPP lawsuits. *Id.* § 768.295(1). Defendants claiming the plaintiff has violated the statute should raise the issue in a motion to dismiss or motion for summary judgment. *Id.* § 768.295(4). If a court finds that the plaintiff violated the Anti-SLAPP statute and the defendant prevails on that ground, then the court "shall award attorney fees and costs incurred in connection with [the plaintiff's meritless] claim." *Id.* The purpose of the statute is to protect media outlets

---

[2] SLAPP stands for Strategic Lawsuits Against Public Participation. Fla. Stat. § 768.295.

from meritless suits in their discerning of issues important to the public. *McQueen*, 377 So.2d at 178 (citing *Ross v. Gore*, 48 So.2d 412, 415 (Fla. 1950) ("The public has an interest in the free dissemination of news.")).

Defendant seeks to "set forth a prima facie case that the Anti-SLAPP statute applies." *Mishiyev v. Davis*, 402 So. 3d 443, 448 (Fla. 2d Dist. Ct. App. 2025). To do so, Defendant "must show that the plaintiff's lawsuit is 'without merit' and brought 'primarily because' the defendant exercised protected speech or conduct." *Vericker v. Powell*, 406 So. 3d 939, 945 (Fla. 2025). Clearly, if a claim is meritless under Anti-SLAPP statute, then it must fail as a matter of law under the summary judgment as well. *See Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1322 (S.D. Fla. 2020) ("Because Plaintiff's suit fails to state a claim for defamation, it was without merit under Florida Statute § 768.295(3).").

### A. Protected speech in connection with a public issue

Florida's Anti-SLAPP statute protects the right to exercise "free speech in connection with public issues . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution." Fla. Stat. § 768.295(1). A written statement made under applicable law and in connection with a magazine article, news report, or other similar work is considered "free speech in connection with a public issue" under the statute. *Id.* § 768.295(2)(a). Free speech made in connection with public issues merely requires a showing that the public speech is contained in or was made in connection with one of the listed media formats or "other

similar modes for widely disseminating protected First Amendment speech." *See WPB Residents for Integrity in Gov't, Inc. v. Materio*, 284 So. 3d 555, 562 (Fla. 4th Dist. Ct. App. 2019) (Gross, J., concurring specially) (citing Samuel J. Morley, *Florida's Expanded Anti-SLAPP Law: More Protection for Targeted Speakers*, 90 Fla. B.J. 16, 22 (Nov. 2016)); *see also* Fla. Stat. § 768.295(2)(a).

Here, Defendant authored a written statement in a news report, one of the enumerated media formats in the statute. Fla. Stat. § 768.295(2)(a). And the subject of Defendant's article is protected under the First Amendment because it reported on Plaintiff's criminal conduct and the associated proceedings. *Palm Beach Newspapers, LLC v. State*, 183 So. 3d 480, 483 (Fla. 4th Dist. Ct. App. 2016) ("The First Amendment's protection of truthful reporting regarding criminal proceedings is especially strong."). Plaintiff asserts that the Anti-SLAPP statute is inapplicable in this case because his criminal conduct was a private business dispute and not a matter of public concern. However, issues of legitimate public concern include "all matters of corruption." *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1493 (11th Cir. 1988); *see also Rosanova v. Playboy Enters.*, 580 F.2d 859, 861 (5th Cir. 1978) ("The nature of [plaintiff's] reported associations and activities concerning organized crime, are, without dispute, subjects of legitimate public concern."). Thus, reporting on Plaintiff's criminal conduct in a news article—as Defendant did here—is clearly considered "free speech in connection with a public issue" within the meaning of the statute, and Florida's Anti-SLAPP statute applies to this case.

### B. Merit of Plaintiff's lawsuit

The remaining question under Florida's Anti-SLAPP statute is whether Plaintiff's claim is without merit. *See* Fla. Stat. § 768.295(1). Defendant claims that the statement at issue—the Article read together with the headline—is not defamatory because it is substantially true. Plaintiff counters that the headline should be read alone, and in doing so, represents that he was convicted of conspiracy to commit murder, which is false and has damaged his reputation. In the alternative, Plaintiff argues that the headline is ambiguous and should be left to the trier of fact to decide if the statement is understood in a defamatory sense.

Under Florida law, a plaintiff alleging defamation must prove five elements: "(1) publication; (2) falsity; (3) the statement was made with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). A false published statement is libelous per se if: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th Dist. Ct. App. 2016) (quoting *Richard v. Gray*, 62 So.2d 597, 598 (Fla. 1953)).

Whether Plaintiff's claim has merit is primarily dependent upon Plaintiff's failure to meet the falsity element.[3] A statement is false for purposes of a defamation claim only if it is "substantially and materially false, not just if it is technically false." *Smith v. Cuban Am. Nat'l Found.*, 731 So.2d 702, 707 (Fla. 3d Dist. Ct. App. 1999). The question of falsity "overlooks minor inaccuracies" that do not affect the substance of the statement and "concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991); *Jews For Jesus, Inc.*, 997 So. 2d at 1107. Moreover, in determining whether a statement is "substantially true," the statement in question must be read in full context of its publication. *Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2nd Dist. Ct. App. 2019); *Parekh v. CBS Corp.*, 820 F. App'x 827, 835 (11th Cir. 2020) (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th Dist. Ct. App. 1983) ("When words and pictures are presented together, each is an important element of what, *in toto*, constitutes the publication. Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines.")). In other words, "a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true." *Kieffer*, 269 So. 3d at 659 (quoting *Smith*, 731 So.2d at 706).

Contrary to Plaintiff's position, the Court finds that the headline and Article together must be considered together. *See id.* (holding that when determining whether

---

[3] The parties also dispute whether Plaintiff is considered a public figure. Though the Court need not ultimately decide whether Plaintiff is a public figure because his claims fail on falsity grounds, the Court notes that the record evidence is sufficient to demonstrate that Plaintiff is at least a limited public figure.

9

a statement is substantially true, the court must read the full context of the publication). Important to this issue, the parties stipulated that "the body of the Article reported the contents of the Police Report and Plea Agreement" (Doc. 61, ¶ 8). The Article summarized the Mesa Police Report on Plaintiff's investigation and provided an update on the status of Plaintiff's case at the time it was written. The Article detailed that Plaintiff threatened Tischer and Burns multiple times and contacted others to carry out the violent act (Doc. 22-3, at 17). This led to police investigating "a possible murder for hire case" and ultimately Plaintiff's conviction of attempted stalking (Doc. 22-3, at 17). The Article accurately reflects the contents of the police report and Plaintiff's criminal case including his plea agreement, and Plaintiff agrees as much (Doc. 61, ¶ 8). Plaintiff also acknowledges that the body of the Article clarifies the headline in that he ultimately pleaded guilty to attempted stalking and the other charges were resolved pursuant to the plea agreement (Doc. 70, ¶ 12). To that end, Defendant's use of "Murder for Hire Conspiracy Case" does not affect the substance of the statement such that the "gist" of the story—Plaintiff's criminal conduct resulting in a conviction—is lost on the reader. *See id.*; *see also Lawrence v. Altice USA*, 841 F. App'x 273, 276 (2d Cir. 2021) (holding that summary judgment was appropriate when an article clarified a seemingly inaccurate headline). Especially in light of the parties' stipulations (*see* Doc. 61, ¶ 8), taken together the headline and the Article are substantially true and therefore not defamatory because Defendant's report fairly summarized Plaintiff's criminal case. Thus, Plaintiff's claim is without merit because the allegedly defamatory statement is not false.

Plaintiff resists this conclusion and would have this Court find that any factual inaccuracies in the headline alone are sufficient to maintain a defamation action against Defendant. Alternatively, Plaintiff argues the headline is at least ambiguous. Plaintiff's arguments are unpersuasive. First, as previously stated, this Court is not permitted to decide falsity based on the headline alone. *Kieffer*, 269 So. 3d at 659. Second, the headline of the Article is not ambiguous because it does not state that Plaintiff was convicted of conspiracy to commit murder. The plain meaning of the title "*Murder For Hire Conspiracy Case Results In Conviction Of Former Online Retail Star*" informs the reader that a murder for hire conspiracy case resulted in a conviction, but not necessarily conspiracy to commit murder or murder for hire. And it is true that the investigation into Plaintiff's criminal conduct resulted in his conviction of attempted stalking (Doc. 61, ¶ 6).

More than that, the headline does not include Plaintiff's name, so it is, at most, misleading as to the subject of the Article and the accusation of the crime. Plaintiff still contends that the headline without his name is defamatory because the Article appears as the first hit when Google searching "Justin Ligeri." Merely Google searching Plaintiff's name does not unequivocally connect the title of the Article with Plaintiff alone, since another keyword or name search could yield the Article as a result.[4]

Significantly for this Court's analysis, Plaintiff has not cited to any precedent to demonstrate that an article associated with an individual through a Google search is

---

[4] For example, the Article populates as a hit when Google searching "Joshua Dean Tischer," one of the victims named in the report.

sufficient to maintain a defamation action or at the very least, can stand as conduct even attributable to the defendant. While there is no strict requirement in Florida that an allegedly defamed person be named in a publication for the statement to be actionable, Florida courts have long held that if a defamed person is not named in the defamatory publication, "the communication as a whole [must] contain[ ] sufficient facts or references from which the injured person may be determined by the persons receiving the communication." *Wolfson v. Kirk*, 273 So. 2d 774, 779 (Fla. 4th Dist. Ct. App. 1973) (citing *O'Neal v. Trib. Co.*, 176 So. 2d 535, 548 (Fla. 2d Dist. Ct. App. 1965)). Plaintiff cannot make that showing here. The headline does not contain sufficient facts or references for one to surmise that Plaintiff is the allegedly injured person. Thus, the headline standing alone is not unambiguously associated with Plaintiff without referencing the body of the report for context, which again this Court underscores is a bedrock principle in determining falsity. *Kieffer*, 269 So. 3d at 659. So, to the extent that the headline is misleading, that is not enough to establish falsity for a defamation claim and the second paragraph of the Article cures any minor inaccuracy. *See Masson*, 501 U.S. at 516; *Jews For Jesus, Inc.*, 997 So. 2d at 1107.

In all, Plaintiff's suit is without merit because the headline and body of the Article when read together are substantially true, and Plaintiff brought the lawsuit primarily because Defendant exercised protected speech, in violation of Florida's Anti-SLAPP statute. *See* Fla. Stat. § 768.295(1). Because the statute provides that "the court shall award the prevailing party reasonable attorney fees and costs incurred in connection with a claim that an action was filed in violation of this section," Fla. Stat.

12

§ 768.295(4), this Court finds that Defendant is entitled to attorney fees and costs in connection with Plaintiff's SLAPP lawsuit.

IV. Conclusion

Accordingly, it is hereby

ORDERED:

1. Defendant's Motion for Summary Judgment (Doc. 72) is GRANTED; and
2. Within ten (10) days of this Order, the Defendant shall confer with Plaintiff regarding the fees and costs sought, and then, within twenty (20) days of this Order, file a motion seeking any fees and costs that are in dispute.

DONE AND ORDERED in Tampa, Florida, on this 10th day of March 2026.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

13